NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
JENNIFER R. JACOBS (Cal. Bar No. 157609)
Assistant United States Attorney
          Federal Building, Suite 7516
          300 North Los Angeles Street
          Los Angeles, California 90012
          Telephone: (213) 894-6167
          Facsimile: (213) 894-7819
          E-mail: Jennifer.jacobs3@usdoj.gov.

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JESSICA LUNDQUIST,<br><br>              Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br>DAVID PEKOSKE, *in his official*<br>*capacity as Administrator of the U.S.*<br>*Transportation Security Administration*,<br>STSO VERONICA CASTELLON, STSO<br>HARRIS, *and* TSM MARTINEZ,<br><br>              Defendants. | Case No. CV 20-4980 FMO (ASx)<br><br>**DEFENDANTS UNITED STATES AND**<br>**PEKOSKE'S NOTICE OF MOTION**<br>**AND MOTION TO DISMIS**<br>**PLAINTIFF'S COMPLAINT**<br><br>[Filed concurrently with declaration of<br>Anita Minaei]<br><br>**Hearing**:<br><br>Date:  October 8, 2020<br>Time: 10:00 a.m.<br>Ctrm: 6D<br><br><br>Honorable Fernando M. Olguin<br>United States District Judge |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION .............................................................................................1

II.     STATUTORY FRAMEWORK ..........................................................................2

III.    LEGAL STANDARDS ......................................................................................3

A.     Rule 12(b)(1) Standard ....................................................................................3

B.     Rule 12(b)(6) Standard ....................................................................................4

IV.     ALLEGATIONS OF THE COMPLAINT AND RELEVANT FACTS.................4

V.      ARGUMENT......................................................................................................6

      A.     Congress Has Not Waived the United States' Sovereign Immunity for the Alleged Intentional Torts Committed by TSA Screeners. ....................6

            1.   **The plain language of the law enforcement proviso shows that TSA screeners are not "investigative or law enforcement officers".**................................................................7

            2.   **The legislative history of the law enforcement proviso confirms its narrow scope.** .................................................10

            3.   **ATSA confirms that TSA screeners are not empowered by law to execute searches, to seize evidence, or to make arrests.**...........................................................11

            4.   **Any ambiguity regarding the scope of the law enforcement proviso should be resolved narrowly in favor of sovereign immunity.** ...................................................13

            5.   **The better-reasoned decisions by other courts support the conclusion that TSA screeners are not "investigative or law enforcement officers".**.............................14

      B.     Plaintiff's Factual Allegations Are Insufficient to State a Claim for Battery, False Imprisonment, or Trespass to Chattels. .............................17

            1.   **The Complaint does not state a claim for battery.** .....................17

            2.   **The Complaint does not state a claim for false imprisonment.**..........................................................18

            3.   **The Complaint does not state a claim for trespass to chattels.**...................................................19

      C.     49 U.S.C. § 46110 Bars Injunctive Relief Against Pekoske......................20

i

        D.     The Complaint Fails to State a Claim Against the TSA Administrator Under the First Amendment, Fourth Amendment, or Any Other Law.......23

VI.    CONCLUSION...........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Abramski v. United States,*
   573 U.S. 169 (2014) ....................................................................................... 7

*Arnsberg v. United States,*
   757 F.2d 971 (9th Cir. 1985) .................................................................. 20, 24

*Asgari v. City of Los Angeles,*
   15 Cal. 4th 744 (1997) ................................................................................. 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................... 4, 14, 23

*Azul-Pacifico, Inc. v. City of Los Angeles,*
   973 F.2d 704 (9th Cir. 1992) .................................................................. 24, 25

*Bailey v. Kennedy,*
   349 F.3d 731 (4th Cir. 2003) .......................................................................... 19

*Base One Tech., Inc. v. Ali,*
   78 F. Supp. 3d 186 (D.D.C. 2015) ................................................................ 23

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 4

*Blitz v. Napolitano,*
   700 F.3d 733 (4th Cir. 2012) .................................................................. 21, 22

*City of Indianapolis v. Edmond,*
   531 U.S. 32 (2000) ........................................................................................ 10

*Clark v. Martinez,*
   543 U.S. 371 (2005) ........................................................................................ 9

*Corbett v. TSA,*
   568 F. App'x 690 (11th Cir. 2014) ............................................................... 14

i

*Corbett v. TSA,*
    767 F.3d 1171 (11th Cir. 2014) ........................................................................13, 17
*Corbett v. TSA,*
    930 F.3d 1255 (11th Cir. 2019) ........................................................................25
*Corbett v. United States,*
    458 F. App'x 866 (11th Cir. 2012) ...................................................................21, 22
*Crump v. City of San Francisco,*
    2007 WL 4591705 (N.D. Cal. Dec. 28, 2007) .................................................17
*DeLong v. United States,*
    600 F. Supp. 331 (D. Alaska 1984) ..................................................................16
*Dolan v. U.S. Post. Serv.,*
    546 U.S. 481 (2006) ..........................................................................................8, 9, 11
*Durso v. Napolitano,*
    795 F. Supp. 2d 63 (D.D.C. 2011) ....................................................................21, 22
*El Bey v. Hilton,*
    2017 WL 3842596 (E.D.N.Y. Sep. 1, 2017) ....................................................22
*Elec. Privacy Info. Ctr. v. DHS,*
    653 F.3d 1 (D.C. Cir. 2011) ..............................................................................22
*FAA v. Cooper,*
    566 U.S. 284 (2012) ..........................................................................................13
*Garrett's Worldwide Enters., LLC v. United States,*
    2015 WL 11825762 (D. Kan. Mar. 16, 2015) ..................................................15
*GeorgiaCarry.Org, Inc. v. Georgia,*
    687 F.3d 1244 (11th Cir. 2012) ........................................................................24
*Gesty v. United States,*
    400 F. Supp. 3d 859 (D. Ariz. 2019) ................................................................9, 17
*Gilbert v. DaGrossa,*
    756 F.2d 1455 (9th Cir. 1985) ..........................................................................24

*Gilmore v. Gonzales*,
   435 F.3d 1125 (9th Cir. 2006) ................................................................21, 22, 25

*Hernandez v. United States*,
   34 F. Supp. 3d 1168 (D. Colo. 2014) ....................................................................17

*Intel Corp. v. Hamidi*,
   30 Cal.4th 1342 (2003) ...................................................................................19, 20

*Iverson v. United States*
   No. 18-3137 (8th Cir. Aug. 31, 2020)....................................................................15

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281 (1988)................................................................................................7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)................................................................................................3

*Lallemand v. County of Los Angeles*,
   2019 WL 8989832 (C.D. Cal. Feb. 5, 2019) .........................................................17

*Lane v. Pena*,
   518 U.S. 187 (1996)................................................................................................6

*Leytman v. United States*,
   No. 18-3859, 2020 WL 1487681 (2d Cir. March 25, 2020)...................................16

*Lorsch v. United States*,
   2015 WL 6673464 (C.D. Cal. Oct. 29, 2015).......................................................15

*Los Angeles County v. Rettele*,
   550 U.S. 609 (2007)................................................................................................8

*Loughrin v. United States*,
   573 U.S. 351 (2014)................................................................................................7

*Mamigonian v. Briggs*,
   2014 WL 301339 n.1 (E.D. Cal. Jan. 28, 2014) ...................................................23

*Martin v. United States*,
   2016 WL 4542289 (S.D. Cal. Aug. 31, 2016)......................................................15

iii

*Millbrook v. United States,*
   569 U.S. 50 (2013)..................................................................................2, 12

*Nat'l Treasury Emps. Union v. Von Raab,*
   489 U.S. 656 (1989).........................................................................................9

*Pellegrino v. United States,*
   937 F.3d 164 (3d Cir. 2019)....................................................................passim

*Randle v. City & County of San Francisco,*
   186 Cal.App.3d 449 (1986) ...........................................................................18

*Robinson v. United States,*
   2008 WL 11509485 (D. Md. Mar. 18, 2008) ..........................................15, 16

*Ruskai v. Pistole,*
   775 F.3d 61 (1st Cir. 2014)............................................................................17

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) .........................................................................4

*Sai v. Smith,*
   2018 WL 534305 (N.D. Cal. Jan. 24, 2018)..................................................21

*Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank of San Francisco,*
   724 F. Supp. 683 (N.D. Cal. 1989) ...............................................................15

*Solomon v. United States,*
   559 F.2d 309 (5th Cir. 1977) .........................................................................15

*United States v. Aukai,*
   497 F.3d 955 (9th Cir. 2007) ........................................................3, 9, 18, 24

*United States v. Hartwell,*
   436 F.3d 174 (3d Cir. 2006)....................................................................13, 18

*United States v. Ramirez,*
   523 U.S. 65 (1998).........................................................................................8

*United States v. Shearer,*
   473 U.S. 52 (1985).........................................................................................6

iv

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017) ................................................................. 3

*Weinraub v. United States*,
   927 F. Supp. 2d 258 (E.D.N.C. 2012) ............................................. 9, 17

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .............................................................. 4

*Wilson v. City of Bakerfield*,
   2016 WL 2997496 (E.D. Cal. May 23, 2016) .................................... 18

*Wilson v. United States*,
   959 F.2d 12 (2d Cir. 1992) ................................................................. 15

Statutes

18 U.S.C. § 2510(7) .................................................................................. 7

21 U.S.C. § 374(a)(1) ............................................................................... 8

28 U.S.C. § 1346(b) .................................................................................. 2

28 U.S.C. § 2680 ....................................................................................... 7

28 U.S.C. § 2680(a) .................................................................................. 7

28 U.S.C. § 2680(b) .................................................................................. 8

28 U.S.C. § 2680(h) ......................................................................... passim

29 U.S.C. § 657(a)(2) ............................................................................... 8

42 U.S.C. § 6927(a) .................................................................................. 8

49 U.S.C. § 114(p) .................................................................................. 15

49 U.S.C. § 114(r) ................................................................................... 22

49 U.S.C. § 44901 ................................................................................... 14

49 U.S.C. § 44901(a) ........................................................................... 2, 12

49 U.S.C. § 44901(h)(2) ............................................................................ 3

49 U.S.C. § 44903(c)(1) ............................................................................ 3

49 U.S.C. § 46110 ............................................................................... i, 20

50 U.S.C. § 1809 ....................................................................................................7

U.S.C. § 46110 ......................................................................................1, 21, 25

Rules

FRCP 12(b)(6) ...............................................................................................1, 4

Regulations

49 C.F.R. § 1520.5(b)(9)(i) ...................................................................................22

49 C.F.R. § 1542.215 ...........................................................................................3

67 Fed. Reg. 8 .....................................................................................................3

## NOTICE OF MOTION AND MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT

PLEASE TAKE NOTICE that, on October 8, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D of the First Street Federal Courthouse, located at 350 W. 1st Street, Los Angeles, CA 90012, before the Honorable Fernando M. Olguin, United States District Judge, Defendants United States of America and David Pekoske, in his official capacity as Administrator of the Transportation Security Administration ("TSA"), will move this Court for an order dismissing Plaintiff's claims against them with prejudice.

This Motion will be made on the following grounds:

1.  The Court lacks subject-matter jurisdiction over Plaintiff's claims against the United States for battery, false imprisonment, and trespass to chattels because Congress has not waived the United States' sovereign immunity for such claims when they are based on the alleged conduct of TSA screening employees;

2.  Plaintiff fails to state a claim for battery, false imprisonment, or trespass to chattels under California law;

3.  The Court lacks subject-matter jurisdiction over Plaintiff's request for indeterminate injunctive relief against TSA Administrator Pekoske; and

4.  The Complaint does not plead any cause of action against TSA Administrator Pekoske and lacks factual allegations sufficient to state any plausible legal claim against him.

This Motion is made upon this Notice, the attached Memorandum of Points and Authorities, all documents incorporated by reference in or submitted in support of the Complaint, all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on and before August 24, 2020.

Dated: August 31, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

/s/
JENNIFER R. JACOBS
Assistant United States Attorney

Attorneys for Defendants United States of America and TSA Administrator David Pekoske

viii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In her Complaint, Plaintiff Jessica Lundquist asserts that three employees of the Transportation Security Administration ("TSA") violated her First and Fourth Amendment rights and committed the California state law torts of battery, false imprisonment and trespass to chattels when they required her to undergo a pat-down search and refused to allow her to access her phone to video record it. Compl. ¶¶ 9-11.[1] Plaintiff also seeks injunctive relief against TSA Administrator David Pekoske to allow airline passengers who have triggered an alarm during airport security screening to abort the screening process, or, alternatively, to allow passengers to access their belongings to obtain a recording device to video a pat-down search. *Id.* ¶¶ 97–102.

The United States moves to dismiss Plaintiff's tort claims on two grounds. First, the FTCA generally does not waive sovereign immunity for claims based on the intentional tortious conduct of federal employees, and the exception for certain torts committed by investigative or law enforcement officers does not apply to TSA screeners. The Court therefore lacks subject-matter jurisdiction over Plaintiff's tort claims and they should be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP")12(b)(1). Second, even if there were subject matter jurisdiction, Plaintiff has failed to state plausible claims for battery, false imprisonment, or trespass to chattels under California law and therefore such claims should be dismissed pursuant to FRCP 12(b)(6) as well.

Further, this Court lacks subject matter jurisdiction over Plaintiff's claim for injunctive relief because it necessarily entails reviewing an order of the TSA Administrator, and such review can only be obtained in an appropriate Court of Appeals under 49 U.S.C. § 46110. In addition, Plaintiff's request for injunctive relief should be dismissed pursuant to FRCP 12(b)(6) because she fails to state a claim against TSA Administrator Pekoske.

---

[1] The three TSA employees who have been sued in their individual capacities have filed a separate motion to dismiss the Complaint.

## II.   STATUTORY FRAMEWORK

### A.   The Federal Tort Claims Act

The FTCA, enacted by Congress in 1946, waives the United States' sovereign immunity for money damages for certain torts committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b). Under the intentional tort exception, however, sovereign immunity is not waived for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* § 2680(h); *see also Millbrook v. United States*, 569 U.S. 50, 52 (2013).

In 1974, Congress—acting in response to a series of "no knock" raids conducted by federal narcotics officers—enacted a statutory exception to the intentional tort exception. *See* Pub. L. No. 93-253, § 2, 88 Stat. 50 (1974); *Pellegrino v. United States*, 937 F.3d 164, 194 (3d Cir. 2019) (Krause, J., dissenting) (discussing legislative history). That exception, commonly referred to as "the law enforcement proviso," waives immunity for claims arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" that are committed by "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). The statute defines an "investigative or law enforcement officer" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

### B.   TSA and the Aviation and Transportation Security Act ("ATSA")

The Aviation and Transportation Security Act ("ATSA"), enacted after the terrorist attacks of September 11, 2001, created the TSA and charged it with ensuring transportation security, including civil aviation security. *See* Pub. L. No. 107-71, 115 Stat. 597 (2001). As relevant here, Congress charged the TSA Administrator with "provid[ing] for the screening of all passengers and property" on commercial passenger aircraft. 49 U.S.C. § 44901(a); *see also id.* § 114(e)(1). To carry out this duty, the TSA Administrator is directed to "develop standards for the hiring and retention of security

1  screening personnel," "train and test security screening personnel," and "be responsible

2  for hiring and training personnel to provide security screening." *Id.* § 114(e)(2)–(4).

3      TSA screeners "carry out administrative searches" at airport security checkpoints

4  to search for prohibited items on the person or property of air passengers prior to

5  boarding. *Vanderklok v. United States*, 868 F.3d 189, 208–09 (3d Cir. 2017). Although

6  TSA screeners are called "Transportation Security Officers" and wear badges as part of

7  their uniforms, they do not have the power to carry firearms, make arrests, or seize

8  evidence. Minaei Decl. ¶¶ 6, 9. They do not have any criminal law enforcement powers,

9  nor do they perform any criminal or civil law enforcement function. *Id.* ¶¶ 6–15; *see also*

10  Compl. ¶ 36 (alleging that none of the individual Defendants in this action is a law

11  enforcement officer). Their highly circumscribed—but vital—role is to prevent items

12  from being taken on commercial aircraft that could compromise the safety of passengers

13  and crew and the public at large. *See United States v. Aukai*, 497 F.3d 955, 960 (9th Cir.

14  2007) (en banc). If screeners encounter a situation that calls for criminal investigative or

15  enforcement activity, TSA directs that they request assistance from law enforcement

16  personnel, who "will determine whether to take action under State or local laws." Civil

17  Aviation Security Rules, 67 Fed. Reg. 8,340, 8,344 (Feb. 22, 2002); *see also* Minaei

18  Decl. ¶ 10. The TSA Administrator is required to provide for at least one law

19  enforcement officer at each security screening location. 49 U.S.C. § 44901(h)(2).

20  Airports are separately required to have an adequate number of local law enforcement

21  personnel on site. *See* 49 U.S.C. § 44903(c)(1); 49 C.F.R. § 1542.215.

22  **III.   LEGAL STANDARDS**

23      **A.   Rule 12(b)(1) Standard**

24      Federal courts are courts of limited jurisdiction, possessing "only that power

25  authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

26  U.S. 375, 377 (1994). "It is presumed that a cause lies outside of this limited jurisdiction

27  . . . , and the burden of establishing the contrary rests upon the party asserting

28  jurisdiction." *Id.* (citations omitted). A challenge to subject-matter jurisdiction may be

asserted as either a facial or a factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

### B.      Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Id.* To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## IV.    ALLEGATIONS OF THE COMPLAINT AND RELEVANT FACTS

Plaintiff presented herself for security screening at a TSA checkpoint in the Hollywood Burbank Airport ("BUR") at approximately 10:00 am on September 29, 2019. Compl. ¶¶ 15-17. After completing review of her travel documents, she was directed to enter a body scanner to screen her body and clothing. *Id.* ¶ 18.[2] STSO

---

[2] Plaintiff does not affirmatively allege whether she had any personal items (*e.g.*, carry-on baggage, purse, backpack, shoes, belt, etc.) with her when she presented to the TSA checkpoint, but she does allege that she had a recording device, presumably a cell

4

1   Castellon then informed Plaintiff that the body scanner alarmed on her and that she

2   would need to submit to a search of her "groin" area. *Id.* ¶ 20. TSA performs a pat-down

3   search to, among other things, resolve a body scanner alarm in order to ensure that

4   persons are not carrying any prohibited items or potential threats to transportation

5   security.[3]

6        STSO Castellon advised Plaintiff that the required pat-down search would include

7   her genital and buttocks area. Compl., ¶ 21 and n. 3 *supra*. Plaintiff told STSO Castellon

8   that she did not consent to the pat-down and would like to leave the checkpoint. Compl.,

9   ¶¶ 22-23. STSO Castellon replied that Plaintiff was required to complete the pat-down

10  before she could leave the checkpoint. *Id.* ¶¶ 24, 40.

11       Plaintiff then asked both STSOs Castellon and Harris "to have the [pat-down]

12  search recorded using her video recording device," *id.* ¶ 26, that "had been cleared by

13  TSA for carriage into the secure area of the airport" *id.* ¶ 27. Plaintiff alleges the STSOs

14  falsely told her that it was prohibited to record screenings, *id.* at ¶¶ 28-30, although

15  Plaintiff also alleges that TSA policy may have been to prohibit passengers from

16  touching their "cleared" belongings before they are "cleared." *Id.* at ¶ 92, n. 3. In fact,

17  this is TSA's policy. *See* Declaration of Anita Minaei, ¶ 20. Plaintiff did not video record

18  her screening. Compl. ¶ 31.

19       A TSA management official, Defendant TSM Martinez, then arrived at the

20  checkpoint. *Id.* at ¶ 32. Martinez and Harris told Plaintiff that she was required to

21  undergo a pat-down search. *Id.* at ¶ 33. Martinez said the pat-search was required

22
23  phone, which would have been screened separately. *See* Compl. ¶ 91 (alleging that such
    a device was screened and cleared separately from the screening of her person).

24       [3] *See* https://www.tsa.gov/travel/security-screening, and click on tab "Pat-Down
25  Screening," which provides in relevant part: "Pat-down procedures are used to determine
    whether prohibited items or other threats to transportation security are concealed on the
26  person. You may be required to undergo a pat-down procedure if the screening
    technology alarms . . . . [¶] A pat-down may include . . . sensitive areas such as breasts,
27  groin, and the buttocks. . . . The officer will advise you of the procedure to help you
    anticipate any actions before you feel them. Pat-downs require sufficient pressure to
    ensure detection . . . ." (Last visited 8/25/20.)
28

regardless of whether Plaintiff wanted to pass through the checkpoint. *Id.* at ¶ 34. STSO Castellon then completed the pat-down. *Id.* ¶ 40. She did not discover any prohibited items or potential threats to transportation security. *Id.* ¶ 41.

## V.   ARGUMENT

### A.   Congress Has Not Waived the United States' Sovereign Immunity for the Alleged Intentional Torts Committed by TSA Screeners.

The United States has sovereign immunity unless it is unequivocally waived by Congress. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Plaintiff would presumably invoke the law enforcement proviso of the FTCA's intentional tort exception as the applicable waiver of sovereign immunity, *see* Compl. ¶ 7, but the plain text of the law enforcement proviso confirms that it applies only to intentional torts committed by traditional investigative or law enforcement officers, *not* by TSA security screeners conducting administrative searches. That interpretation is confirmed by the proviso's legislative history, which demonstrates that Congress did not intend for it to reach any federal employee who conducts any type of search, as well as the statute authorizing the TSA Administrator to ensure security screening. And even if a contrary construction were plausible, any ambiguity should be construed narrowly. Certainly, Congress did not clearly signal an intent to waive the United States' sovereign immunity for claims of intentional torts such as battery or false imprisonment arising out of TSA screeners' typical daily search of over two million passengers and crew.[4]

---

[4] The intentional tort exception set forth in 28 U.S.C. § 2680(h) expressly bars Plaintiff's claims for battery and false imprisonment.  It also bars *any* claim arising out of alleged conduct constituting those torts. *United States v. Shearer*, 473 U.S. 52, 55 (1985). Accordingly, § 2680(h) bars Plaintiff's claim for trespass to chattels, as that claim arises out of and depends on factual allegations supporting her claim for false imprisonment, namely the allegations that she was confined and not permitted to leave or access her belongings until she completed pat-down screening.

1

2

3

           1.     **The plain language of the law enforcement proviso shows that TSA screeners are not "investigative or law enforcement officers".**

4

5

6

7

8

9

10

11

     In applying the FTCA's law enforcement proviso, the Court must "look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).  Statutory terms should not be construed "in a vacuum, but with reference to the statutory context, structure, history, and purpose." *Abramski v. United States*, 573 U.S. 169, 179 (2014). Here, there are multiple indicators in the statutory text that show it is intended to apply only to traditional law enforcement officers empowered to investigate and respond to suspected criminal conduct.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

     First, Congress limited the proviso to "investigative or law enforcement officers," rather than "employees." Elsewhere in 28 U.S.C. § 2680, in contrast, Congress created exceptions to the FTCA's waiver of sovereign immunity for certain claims arising out of the "act or omission of an employee of the Government." 28 U.S.C. § 2680(a), (e). Where Congress uses certain language in one statutory provision but not another, that choice should be given significance. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014). And Congress's use of "investigative or law enforcement officer" in the proviso carries further significance, as Congress used this phrase elsewhere in the U.S. Code to describe individuals authorized by law to perform traditional criminal law enforcement functions. *See, e.g.,* 18 U.S.C. § 2510(7) (describing an officer "empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses"); 50 U.S.C. § 1809 (criminalizing electronic surveillance under color of law, but establishing the defense "that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order").

28

7

Second, Congress expressly defined "investigative or law enforcement officer" to mean an officer "empowered by law to execute searches, to seize evidence or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Even viewed in isolation, the authority to "execute searches" naturally connotes the traditional police power to execute a warrant or other type of criminal search, such as a search incident to arrest. *See, e.g.*, *United States v. Ramirez*, 523 U.S. 65, 69 (1998) ("[A]pproximately 45 officers gathered to execute the [search] warrant."); *Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007) ("In executing a search warrant officers may take reasonable action to secure the premises."). Notably, Congress used the term "execute" rather than more general language such as "conduct" or "carry out." In contrast, where Congress has described administrative searches of the type carried out by TSA screeners—searches conducted without individualized suspicion for a particular purpose other than criminal investigation—it has typically used terms such as "screening" or "inspection." *See* 29 U.S.C. § 657(a)(2) (OSHA inspectors may "inspect and investigate"); 21 U.S.C. § 374(a)(1) (FDA inspectors may "enter" and inspect"); 42 U.S.C. § 6927(a) (authorizing EPA inspectors "to enter" and "to inspect").

Third, the other listed powers in the proviso's definition of investigative or law enforcement officer—to "seize evidence" and "to make arrests"—confirm that "execute searches" should be read narrowly. Those powers are quintessential police powers. Under the interpretive principle that words in a list should be read together and given a related meaning—*i.e.*, that a "word is known by the company it keeps"—"seize evidence" and "make arrests" suggest that "execute searches" should be read to be limited to traditional law enforcement searches. *See Dolan v. U.S. Post. Serv.*, 546 U.S. 481, 486–87 (2006). In *Dolan*, the Supreme Court, in interpreting the statutory exception to the FTCA's waiver of sovereign immunity for claims "arising out of the loss, miscarriage, or negligent transmission of letters or postal matter," 28 U.S.C. § 2680(b), refused to consider the phrase "negligent transmission" "in isolation * * * [to] embrace a wide range of negligent acts committed by the Postal Service in the course of delivering

8

mail," instead reading it in relation to "loss" and "miscarriage" as limited to "negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address." *Id.* at 486. A similar analysis applies here, and supports an interpretation of "execute searches" to mean only traditional criminal law enforcement searches. *See, e.g.*, *Weinraub v. United States*, 927 F. Supp. 2d 258, 262 (E.D.N.C. 2012) ("[T]he phrase 'to execute searches,' when considered within the broader context of the law enforcement proviso, does not contemplate the type of searches performed by TSA screeners.").

Fourth, the list of duties carried out by "investigative or law enforcement officers"—"to execute searches, to seize evidence, or to make arrests"—is further qualified by the requirement that the search, seizure, or arrest is "for violations of Federal law." *See, e.g., Gesty v. United States*, 400 F. Supp. 3d 859, 864 (D. Ariz. 2019). An investigative or law enforcement officer may only make an arrest for a violation of federal law that is criminal in nature. That plain meaning should inform the construction of the first two items of the list to similarly refer to traditional criminal law enforcement. Furthermore, the phrase "for violations of Federal law" is best read to apply to all three similar items in the integrated list. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) (a phrase that "applies without differentiation to all three categories" retains the same meaning when modifying each category). The security screenings carried out by TSA screeners are not for the purpose of determining whether a violation of federal law has been committed or gathering evidence of such a violation. *See Pellegrino*, 937 F.3d at 184 (Krause, J., dissenting) ("[S]uch suspicionless screenings are not implemented to gather evidence of a crime with an eye toward criminal prosecution[.]"); Minaei Decl. ¶ 9 ("[N]o TSA screener at BUR is authorized to . . . execute a criminal investigative search."). Rather, an airport screening is an administrative search that is carried out without the need for individualized suspicion or probable cause. *See, e.g., Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 675 n.3 (1989); *Aukai*, 497 F.3d at 960 (explaining that "airport screening searches . . . are conducted . . . in furtherance of an administrative purpose"). Indeed, aviation security screenings by TSA screeners would

9

be unconstitutional if their primary purpose were to detect evidence of ordinary criminal wrongdoing.[5] *See City of Indianapolis v. Edmond*, 531 U.S. 32, 41–43 (2000). The modifier "for violations of Federal law" should not be construed to mean criminal violations when modifying the power to make arrests, but to mean criminal *and civil* violations when modifying the power to execute searches.

Finally, it is notable that the specific intentional torts that are covered by the law enforcement proviso—assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution—are the types of torts typically committed by individuals with traditional police powers. Taken as a whole, the statutory language makes clear that the proviso is best understood to permit only claims arising out of the conduct of officers empowered with traditional criminal investigative and law enforcement functions.

### 2.   The legislative history of the law enforcement proviso confirms its narrow scope.

Although the plain language of the law enforcement proviso is clear that Congress did not intend for it to apply to any federal employee conducting a search, that conclusion is also supported by its legislative history, which demonstrates that Congress intended to limit the proviso to federal law enforcement officers empowered to perform criminal investigatory duties.

The law enforcement proviso was enacted following a series of no-knock, warrantless searches of houses that federal and state narcotics officers mistakenly believed were locations for drug dealing. John C. Boger, Mark Gitenstein & Paul R. Verkuil, The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis, 54 N.C. L. Rev. 497, 500 (1976). The occupants testified before Congress that plain-clothed officers broke into their homes, pointed guns at them, and caused extensive

---

[5] TSA screeners must call for assistance from law enforcement officers whenever they believe there may be a need for investigative or criminal enforcement intervention. Minaei Decl., ¶ 10. Nor do TSA screeners investigate whether their discovery of a prohibited item amounts to a civil regulatory violation; such discoveries are referred to a separate class of TSA employees: Transportation Security Inspectors. <u>Id.</u> ¶ 11.

damage. *Id.* at 500–501, 500 n.7. The press reported that the same law enforcement officers had been involved in earlier, mistaken searches that had caused substantial injury. *Id.* at 502–03. Following hearings, Congress enacted the law enforcement proviso in its current form.

Before enacting the proviso, Congress considered three separate bills that would have amended the broad immunity conferred by the FTCA's intentional tort exception. Two of the bills waived sovereign immunity for torts committed by *all* federal employees. *See* 54 N.C. L. Rev. at 510–17. The bill that became the law enforcement proviso, in contrast, was limited to torts committed by "investigative or law enforcement officers." Members of Congress and the Executive Branch repeatedly noted that the proviso bill "only applies to law enforcement officers. It does not apply to any other Federal employees that might violate the rights of an individual." 120 Cong. Rec. 5287 (statements of Reps. Donohue and Wiggins); *see also* Federal Tort Claims Amendments: Hearings on H.R. 10439 Before the Subcomm. on Claims and Governmental Relations of the H. Judiciary Comm., 93d Cong. 18 (1974) (testimony of Irving Jaffe, Acting Assistant Att'y Gen.) ("We have Department of Agriculture investigators who go look at books and records. We have Defense Department auditors to look at books and records. . . . They are not law enforcement officers" under the definition in the bill enacted into law); Sen. Rep. No. 93-588 (1974) (the purpose of the law enforcement proviso was to provide a remedy for "innocent individuals who are subjected to raids of the type conducted in Collinsville, Illinois"). This history confirms that Congress did not intend the proviso to apply to every federal employee who might have authority to conduct some type of search, but rather intended the proviso to apply only to federal law enforcement officers empowered to perform criminal investigatory duties.

### 3. ATSA confirms that TSA screeners are not empowered by law to execute searches, to seize evidence, or to make arrests.

The law enforcement proviso requires that an "officer" must be "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal

Law." 28 U.S.C. § 2680(h). Determining whether the proviso applies, therefore, requires examining the powers granted by law to the officer. *See Millbrook*, 569 U.S. at 56. Here, the relevant laws governing aviation security screening make clear that TSA screeners are not granted the powers listed in § 2680(h)—in sharp distinction from a separate class of law enforcement officers who are.

The ATSA directs the TSA Administrator to "provide for the screening of all passengers and property." 49 U.S.C. § 44901(a). The TSA Administrator performs that function by hiring and training "security screening personnel," *id.* § 114(e) (or by entering into a contract with a qualified private security company, *id.* §§ 44901(a), 44920). But the ATSA does not grant those screening personnel any law enforcement powers to execute searches, seize evidence, and make arrests.

In contrast, the TSA Administrator can designate a federal employee "to serve as a law enforcement officer." *Id.* § 114(p)(1). A designated law enforcement officer is then granted the "[p]owers" under § 114(p)(2) to "carry a firearm"; "make an arrest" for federal offenses; and "seek and execute warrants for arrest or seizure of evidence . . . upon probable cause that a violation has been committed." TSA law enforcement officers serve, for example, as federal air marshals, deployed undercover on aircraft to protect passengers and crew against the risk of criminal and terrorist violence. That is the type of "investigative or law enforcement officer" that Congress intended to come within the scope of the law enforcement proviso. TSA security screeners, in contrast, are not.

In light of ATSA's bifurcation of screening authority and law enforcement authority, this Court should follow others that have embraced the commonsense understanding that the scope of the phrase "investigative or law enforcement officer" is meant to include only those who perform traditional law enforcement functions. *See Pellegrino*, 937 F.3d at 198–99 (Krause, J., dissenting). Unlike the law enforcement officers whose abusive conduct triggered enactment of the law enforcement proviso, TSA screeners do not conduct criminal investigations, search homes, or have weapons to

draw. They are not authorized to exert force in furtherance of TSA's screening mission,[6] and they perform their duties only at designated airport checkpoints where individuals are subject to an administrative search because they have chosen to enter the sterile area of the airport. *See Corbett v. TSA*, 767 F.3d 1171, 1182 (11th Cir. 2014) ("Airport screening is a permissible administrative search; security officers search all passengers; abuse is unlikely because of its public nature; and passengers elect to travel by air knowing that they must undergo a search."); *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006) (noting that during TSA security screening "the possibility for abuse is minimized by the public nature of the search").

### 4. <u>Any ambiguity regarding the scope of the law enforcement proviso should be resolved narrowly in favor of sovereign immunity</u>.

Finally, even if it were possible to read the language in the proviso, in isolation and out of context, to cover every federal employee who might be empowered to carry out some type of search, that should not be a sufficient basis to abrogate the United States' sovereign immunity in the absence of a clear statement that Congress intended such a result. A congressional waiver of sovereign immunity is strictly construed in favor of the government, and "[a]ny ambiguities in the statutory language are to be construed in favor of immunity." *FAA v. Cooper*, 566 U.S. 284, 290–91 (2012).

Adhering to that axiom is especially important in the factual context in which Plaintiff's tort claims arise. Airport screening necessarily involves intentional conduct by TSA screeners that an airline passenger might find objectionable. For example, screeners may intentionally instruct a passenger to remain standing in a particular area of the checkpoint until a screening procedure can be completed. Screeners may also intentionally direct a passenger not to touch her belongings that have cleared x-ray screening until she has completed the required procedures to clear her body and clothing.

---

[6] TSA does not, however, prohibit TSA screeners or TSMs from defending themselves or others in order to stop a physical assault. Minaei Decl. ¶¶ 10, 14.

13

1   In addition, screening may entail a certain degree of intentional physical contact—a pat-

2   down—in order to ensure that no security threat is present. Under the FTCA, a passenger

3   may bring a claim for up to two years after a security screening experience (long after

4   the typical period in which video of that screening is typically retained, *see* Minaei Decl.

5   ¶ 12). Given that TSA screeners typically interact with more than two million passengers

6   per day, Minaei Decl. ¶ 5, opening the FTCA to such an expansive new realm of

7   interaction entails substantial resource allocation issues that Congress is best positioned

8   to address in the first instance.

9       **5.      The better-reasoned decisions by other courts support the**

10              **conclusion that TSA screeners are not "investigative or law**

11              **enforcement officers".**

12          As shown above, the text, context, and history of the law enforcement proviso

13   demonstrate that it does not apply to TSA employees conducting airport security

14   screenings. Although courts have not reached uniform results on this issue, the better-

15   reasoned and more persuasive authority supports the conclusion that TSA screeners are

16   not "investigative or law enforcement officers" for purposes of 28 U.S.C. § 2680(h).

17          The first Court of Appeals to reach the question, the Eleventh Circuit, concluded

18   unanimously that TSA screeners do not qualify as law enforcement officers for the

19   purposes of the FTCA's law enforcement proviso. *See Corbett v. TSA*, 568 F. App'x 690,

20   700–02 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1559 (2015). The Eleventh Circuit

21   reasoned that TSA screeners "are not 'officers of the United States Government,' as

22   required by § 2680(h)'s statutory language." *Id.* at 701. The Court pointed to the

23   distinction drawn in the FTCA between an "employee" of the federal government and an

24   "officer of the United States," and reasoned that "[t]his variation in language is not

25   insignificant." *Id.* The Court further emphasized that "the federal statutes governing

26   airport security screening differentiate between federal employees of TSA and law

27   enforcement officers," and that only the latter are the types of officers covered by

28   § 2680(h). *Id.* (comparing 49 U.S.C. § 44901, which provides that "screening . . . shall be

14

carried out by a Federal Government employee," with 49 U.S.C. § 114(p), which empowers the TSA Administrator to designate employees as "law enforcement officers" with the authority to carry a firearm, make arrests, and seek and execute search and arrest warrants").

Although the opposite conclusion was reached by a divided *en banc* Third Circuit in *Pellegrino v. United States*, 937 F.3d 164 (3d Cir. 2019), the dissenting opinion in that case, authored by Judge Krause and joined by Judges Jordan, Hardiman, and Scirica, more completely and naturally harmonizes both the terms of the statute and the applicable case law.[7] The dissenting judges exhaustively analyzed the language of the law enforcement proviso, viewed in light of the longstanding distinctions between investigatory law enforcement searches and administrative searches, as well as its legislative history. *Id.* at 182–96. The dissent also pointed to the sweeping ramifications of the majority's holding, which the dissenters concluded would naturally result in the waiver of sovereign immunity for all employees who perform administrative searches." *Id.* at 196–98. That majority opinion not only created a circuit split with the Eleventh Circuit, the dissent noted, but was at odds with the overwhelming weight of circuit authority involving other types of employees who did not enforce federal criminal laws. *Id.* at 197–200.[8] As the dissent

---

[7] A divided Eighth Circuit panel issued a decision on the day the instant motion was filed in which the majority and dissenting opinions generally tracked those in *Pellegrino*. *See Iverson v. United States*, Case No. 18-3137 (8th Cir. Aug. 31, 2020).

[8] The dissent's analytical approach is also in keeping with how courts, including one in this District, have understood and applied the proviso to a variety of federal employees who lack traditional criminal law enforcement authority. Courts have held that certain employees do not qualify as investigative or law enforcement officers despite being empowered to engage in activities constituting a Fourth Amendment search or seizure. *See, e.g.*, *Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992) (federal parole officers); *Solomon v. United States*, 559 F.2d 309, 310 (5th Cir. 1977) (security guards at military exchange empowered to stop and search suspected shoplifters); *Martin v. United States*, 2016 WL 4542289, at *4-6 (S.D. Cal. Aug. 31, 2016) (FAA operations inspector who "could plausibly" have authority to perform "administrative inspections and investigations" that qualify as searches under the Fourth Amendment); *Lorsch v. United States*, 2015 WL 6673464, at *11 (C.D. Cal. Oct. 29, 2015) (Veterinary Medical Officers and Animal Care Inspectors empowered to execute investigative inspection that qualifies as a search under the Fourth Amendment); *Garrett's Worldwide Enters., LLC v. United States*, 2015 WL 11825762, at *5 (D. Kan.

15

explained, the majority opinion "dissects the law enforcement proviso into individual words and isolated phrases—text without context—and picks the broadest conceivable definition of each word." *Id.* at 181. "That breathtaking expansion of the proviso is textually unsound, departs from other circuits, and contravenes the rule that waivers of sovereign immunity must be strictly construed in favor of the Government." *Id.* And even if the majority's interpretation of the law enforcement proviso was "plausible," that was insufficient to support the majority's ruling because "a waiver of sovereign immunity must be unequivocally expressed in statutory text, and any ambiguities in the statutory language are to be construed in favor of immunity." *Id.* (citation and internal quotation marks omitted).

Indeed, even the majority in *Pellegrino* sought to cabin the reach of its holding by distinguishing the screening conducted by TSA screeners from what it called "typical administrative searches," emphasizing the "physically intrusive and ubiquitous nature of TSA searches." *Id.* at 176. But as the dissenters correctly recognized, "this reading of the provision as limited to 'physical searches' [is not only] atextual, it is made out of whole cloth." *Id.* at 195. The better reading of the proviso is the one advanced by the *Pellegrino* dissenters, which is grounded in statutory text, context, and history.[9] And consistent with that view, the overwhelming majority of the district courts that have decided this issue

Mar. 16, 2015) (Department of Transportation inspectors who had badges and investigation powers); *Robinson v. United States*, 2008 WL 11509485 (D. Md. Mar. 18, 2008) (workplace supervisor who searched subordinate's cubicle); *Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank of San Francisco*, 724 F. Supp. 683, 689 (N.D. Cal. 1989) (Federal Savings and Loan Insurance Corporation examiners empowered to access and take documentary records for enforcement purposes); *DeLong v. United States*, 600 F. Supp. 331, 332-36 (D. Alaska 1984) (servicemen posted as "guards" and empowered to apprehend and detain suspected intruders, search them, and temporarily seize items).

[9] The same question is also pending before the Eighth Circuit. *See Iverson v. United States*, No. 18-3137 (8th Cir. argument held Oct. 15, 2019). The Second Circuit recently declined to resolve it, *Leytman v. United States*, No. 18-3859, 2020 WL 1487681 (2d Cir. March 25, 2020), instead remanding to the district court for further fact discovery on whether the TSA employee at issue "was a screener or a law enforcement officer within the meaning of federal airport security laws." *Id.* at *2. No such discovery is necessary here, as it is clear that the federal employees who allegedly committed battery, false imprisonment, and trespass to chattels are TSA screeners and managers who have not been designated to serve as law enforcement officers. Minaei Decl. ¶ 18.

have concluded that TSA screeners are not investigative or law enforcement officers for purposes of the FTCA.[10]

In sum, TSA screeners who only conduct limited administrative searches for prohibited items on the person or in the property of airline passengers are not officers empowered to execute searches for violations of federal law within the meaning of the law enforcement proviso. Thus, Congress has not waived the United States' sovereign immunity for claims arising from the intentional torts listed in the proviso—including battery and false imprisonment—committed by TSA screeners. Because Plaintiff's tort claims clearly arise out of allegations of battery and false imprisonment, the Court should dismiss the claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

## B. Plaintiff's Factual Allegations Are Insufficient to State a Claim for Battery, False Imprisonment, or Trespass to Chattels.

Even if there were jurisdiction over Plaintiff's tort claims, the Complaint lacks factual allegations sufficient to state a plausible claim under California law.

### 1. The Complaint does not state a claim for battery.

Under California law, an essential element of the tort of battery is an *unlawful* touching. *Crump v. City of San Francisco*, 2007 WL 4591705, at *5 (N.D. Cal. Dec. 28, 2007); *Lallemand v. County of Los Angeles*, 2019 WL 8989832, at *19 (C.D. Cal. Feb. 5, 2019) ("[B]ecause the contact during the patdown was not unlawful, it did not constitute a battery."). The physical contact that occurs during a TSA pat-down at an airport checkpoint in accordance with TSA's standard operating procedures is lawful. *See, e.g., Corbett*, 767 F.3d at 1182 (holding that TSA's "pat-down procedure . . . is a reasonable administrative search"); *Ruskai v. Pistole*, 775 F.3d 61, 77 (1st Cir. 2014);

---

[10] *See e.g., Frey v. Town of Jackson,* No. 19-cv-50, ECF 89 at 47–48 (D. Wyo. Dec. 2, 2019); *Gesty*, 400 F. Supp. 3d 859, *aff'd on reconsideration*, No. 18-cv-533, ECF 33 (D. Ariz. Oct. 23, 2019) (explaining that the intervening *Pellegrino* decision "does not change [this] Court's analysis or determination"); *Hernandez v. United States*, 34 F. Supp. 3d 1168 (D. Colo. 2014); *Weinraub*, 927 F. Supp. 2d 258.

*Aukai*, 497 F.3d at 960; *Hartwell*, 436 F.3d at 180.[11] Plaintiff has not alleged that her pat-down deviated from TSA's prescribed procedures in any way. Further, Plaintiff's assertion that she did not consent to the pat-down is irrelevant. The lawfulness of a TSA pat-down "does not depend, in whole or in part, upon the consent of the passenger being searched." *Aukai*, 497 F.3d at 957. Accordingly, Plaintiff has failed to allege facts that state a plausible claim of battery.

## 2. **The Complaint does not state a claim for false imprisonment.**

Under California law, "[t]he tort of false imprisonment is defined as the *unlawful* violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 281 (1997) (quotation omitted and emphasis added). Thus, a viable claim for false imprisonment must state allegations of "conduct that is without valid legal authority." *Randle v. City & County of San Francisco*, 186 Cal.App.3d 449, 456 (1986). Here, the Complaint is devoid of facts that the TSA screeners acted without valid legal authority.[12]

In *Aukai*, the Ninth Circuit, sitting *en banc*, held that it was lawful for TSA employees to briefly hold a passenger at an airport checkpoint and require completion of security screening procedures despite the passenger informing them "that he no longer wished to board a plane and wanted to leave the airport." 497 F.3d at 957; *see also infra* part V.D.(ii) (discussing *Aukai*). In light of *Aukai*, Plaintiff's false imprisonment claim

---

[11] While these cases evaluated the constitutionality of airport security screening pat-downs rather than the viability of a state tort law claim for battery, pat-down procedures upheld as constitutionally reasonable cannot result in battery liability. *See, e.g., Wilson v. City of Bakersfield*, 2016 WL 2997496, at *9 (E.D. Cal. May 23, 2016) ("[A] claim for battery under California law is analyzed under the Fourth Amendment's reasonableness standard." (citations omitted)).

[12] Notably, Plaintiff did not allege that in order to detain her TSA screeners touched her, exerted force, or otherwise physically prevented her from leaving. Instead, TSA screeners did nothing more than give verbal instructions that Plaintiff was required to complete screening before leaving the checkpoint. Providing such instructions was lawful and wholly consistent with their job responsibilities. *See* Minaei Decl. ¶ 10 ("TSA screeners generally are not authorized to exert force to physically restrain an individual in furtherance of TSA's screening mission.").

18

1  fails as a matter of law and should be dismissed.[13]

2      **3.**   **The Complaint does not state a claim for trespass to chattels.**

3     The tort of trespass to chattels is committed when the owner of personal property

4  is unjustifiably dispossessed of the item or deprived of its use for a substantial time so as

5  to cause harm. Restatement (Second) of Torts § 218 (1965); *Intel Corp. v. Hamidi*, 30

6  Cal.4th 1342, 1351 (2003). Here, Plaintiff alleges that TSA employees interfered with

7  access to her device so that she—or, hypothetically, someone else—could not record the

8  pat-down. Compl., ¶¶ 28-31,92 n.3. With regard to Plaintiff's access to her device,

9  Plaintiff alleges that it may have been TSA policy that she "could not yet touch her

10 'cleared' belongings because she herself was not 'cleared.'" Compl. ¶ 92 n.3. Indeed,

11 this was and is the rule set forth in TSA's standard operating procedures. Minaei Decl. ¶

12 20. The rule is grounded on the fundamental security concern that if a person who has

13 triggered a body scanner alarm and is awaiting required pat-down screening is permitted

14 to access her carry-on property, she could have the opportunity to discard a prohibited

15 item into the carry-on property so that it is not detected during the pat-down. *Id.* Because

16 TSA screening procedures did in fact prohibit Plaintiff from personally retrieving her

17 recording device before she completed pat-down screening—a self-evidently reasonable

18 rule implemented under lawful authority—the TSA screeners were justified in allegedly

19 preventing her from doing so, and thus did not commit the tort of trespass to chattels. *See*

20 Restatement (Second) of Torts § 265 (1965) ("One is privileged to commit an act which

21 would otherwise be a trespass to a chattel . . . if he is acting in discharge of a duty or

22 authority created by law to preserve the public safety[.]").

23    With regard to Plaintiff's assertion that TSA employees "denied her the ability to

24 have someone else who was already cleared use her device to record the search," Compl.

25

26    [13] While *Aukai* evaluated the constitutionality of a brief detention at the
checkpoint to require a passenger to complete screening procedures rather than the
27 viability of a state tort law claim for false imprisonment, there should be no doubt that
*Aukai* forecloses such a claim. *See, e.g., Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir.
28 2003) (noting that a state law tort claim for false imprisonment was "intertwined with
[plaintiff]'s Fourth Amendment unlawful seizure claim").

¶ 92 n.3, the Complaint fails to allege that there was any such person able and willing to access and use her device.  The Complaint does not allege that Plaintiff was traveling with a companion or that she asked any bystander to help her with recording. Accordingly, Plaintiff has suggested nothing more than speculative, hypothetical interference with her ability to make use of her recording device by asking some unspecified person to access and operate it.  "A mere . . . theoretical deprivation of use [of an item of personal property] is not sufficient" to state a claim for trespass to chattels. Restatement (Second) of Torts § 217 cmt. i.

## C.    49 U.S.C. § 46110 Bars Injunctive Relief Against Pekoske

The only portion of the Complaint that implicates Defendant TSA Administrator Pekoske is Count 8 requesting indeterminate injunctive relief. Compl. ¶¶ 97–102. Count 8 invokes "the First & Fourth Amendment" and vaguely seeks "prevention of future forcible searches & seizures and 1A injuries." *Id.* Count 8 does not allege any facts regarding how a particular decision, action, or omission by TSA Administrator Pekoske—rather than the alleged conduct of the three TSA employees who have been sued in their individual capacities—independently violated the First or Fourth Amendment or any other law. *See Arnsberg v. United States*, 757 F.2d 971, 974 (9th Cir. 1985) (holding that "the United States is not liable under the Fourth Amendment for unreasonable seizures committed by its agents"). Nor does it identify any statute or legal authority that provides Plaintiff with a cause of action to seek injunctive relief against the TSA Administrator. Thus, the nature of Plaintiff's legal claim against Administrator Pekoske is unclear. What is clear, however, is that any claim that can be construed from Count 8 is barred from being heard in this Court because adjudicating the claim would necessarily entail reviewing TSA's Screening Checkpoint Standard Operating Procedures ("SOP"), which constitute an order of the TSA Administrator. Under 49 U.S.C. § 46110, the Courts of Appeals have exclusive jurisdiction over claims involving review of such orders. Accordingly, this Court lacks subject-matter jurisdiction over any claim that can be construed from Count 8.

TSA's policies and procedures for conducting passenger security screening at airport checkpoints are set forth in the SOP. *See, e.g.*, *Blitz v. Napolitano*, 700 F.3d 733, 736–37 (4th Cir. 2012). It is well established that the SOP "constitutes an order of the TSA Administrator under § 46110." *Id.* at 740; *accord Corbett v. United States*, 458 F. App'x 866, 869 (11th Cir. 2012); *Durso v. Napolitano*, 795 F. Supp. 2d 63, 69 (D.D.C. 2011); *Sai v. Smith*, 2018 WL 534305, at *7 (N.D. Cal. Jan. 24, 2018).[14] Any legal claim, alleged injury, or requested remedy that could be construed from Count 8 cannot be addressed without reviewing the TSA procedures applicable to the circumstances of Plaintiff's screening. Because those procedures are set forth in the SOP, that review can only be obtained with a petition for review in an appropriate Court of Appeals under 49 U.S.C. § 46110. Accordingly, this Court lacks subject-matter jurisdiction to enjoin the TSA Administrator with regard to the SOP's contents or implementation. *See, e.g., Blitz*, 700 F.3d at 743 (affirming district court ruling that § 46110 "deprived it of subject-matter jurisdiction" over a claim implicating review of TSA's SOP); *Corbett*, 458 F. App'x 866 (affirming district court's dismissal for lack of subject-matter jurisdiction of "a complaint asserting that the use of AIT [body scanner] devices and pat-down searches" violated the Fourth Amendment); *Durso*, 795 F. Supp. 2d 63 (finding no jurisdiction over Fourth Amendment claims challenging AIT and pat-downs "because the challenged screening procedures are employed pursuant to a TSA order").

Section 46110 operates to bar Count 8 against TSA in this Court even though Plaintiff asserts that she is not directly challenging the constitutionality of TSA's SOP. Under the "inescapable-intertwinement doctrine" applicable to Section 46110, the statute must be read to "give the courts of appeals [exclusive] jurisdiction over not only challenges to" TSA's screening policies and procedures set forth in the SOP, "but also

---

[14] The Court of Appeals for the Ninth Circuit has not had occasion to specifically hold that the SOP is an order within the meaning of § 46110, but is has held that a now-outdated similar document, a Security Directive that required airline operators to check passengers' identification when issuing boarding passes, was an order under the statute. *Gilmore v. Gonzales*, 435 F.3d 1125, 1131-33 (9th Cir. 2006).

1  any claims inescapably intertwined with the review of those" policies and procedures.

2  *Durso*, 795 F. Supp. 2d at 69; *see also Gilmore*, 435 F.3d at 1133 n.9 (holding that

3  constitutional challenge to airline passenger identification procedures was inescapably

4  intertwined with a review of "the orders issued by TSA with respect to airport

5  security"); *Corbett*, 458 F. App'x at 871 (holding that "Corbett cannot escape the

6  jurisdictional limitations of § 46110 by claiming that he asserts a broad constitutional

7  challenge" because such a challenge "is inextricably intertwined with the SOP"). "A

8  basic purpose" of the "inescapable intertwinement doctrine" is to prevent plaintiffs

9  from avoiding the jurisdictional requirement of Section 46110 "through creative

10 pleading." *Durso*, 795 F. Supp. 2d at 70.

11      Here, Count 8 asserts that TSA should be enjoined in some unspecified manner

12 because it somehow failed to prevent its employees from violating the SOP and thereby

13 violating the First and Fourth Amendments. The request for an injunction thus

14 necessarily depends on Plaintiff's assertion that STSOs Castellon and Harris and TSM

15 Martinez did not follow the SOP.[15] In order to adjudicate the request, this Court would

16 have to review the SOP and determine whether the TSA employees' alleged conduct

17 was in compliance with or contravention of the prescribed screening procedures. If the

18 Court finds that their alleged conduct was actually in accordance with the SOP, then

19 Plaintiff's claim that the conduct was unconstitutional is in fact a challenge to the SOP

20 itself. *See El Bey v. Hilton*, 2017 WL 3842596, at *5 (E.D.N.Y. Sep. 1, 2017)

21 (explaining that whether a plaintiff "recognizes it or not," a claim seeking relief from

22 application of a screening procedure at a TSA checkpoint "must take head-on the SOP

23 ───────────────────

24      [15] TSA's SOP is Sensitive Security Information ("SSI") that is not public. *See* 49
   U.S.C. § 114(r); 49 C.F.R. § 1520.5(b)(9)(i); *Blitz*, 700 F.3d at 737; *Elec. Privacy Info.*

25 *Ctr. v. DHS*, 653 F.3d 1, 3 (D.C. Cir. 2011). Plaintiff therefore does not know what the
   SOP prescribes when a passenger asks to refuse further screening after triggering a body

26 scanner alarm or asks to go retrieve a recording device from her carry-on items in an x-
   ray bin before she has completed screening of her person. *See* Compl. ¶ 92 n.3

27 (acknowledging that Plaintiff does not know TSA procedures). Accordingly, the Court
   need not accept Plaintiff's conclusory assertion that her constitutional claims

28 unequivocally challenge only individual TSA employees' conduct and not TSA's
   procedures set forth in the SOP.

protocols" or, "[a]t a minimum," raise issues that are "inextricably intertwined with the SOP"). No matter how Plaintiff's request for an injunction is construed, this Court's consideration of the request would necessarily implicate detailed review of TSA's SOP. The request is thus barred from being heard in this Court, and it should be dismissed for lack of jurisdiction.

### D. The Complaint Fails to State a Claim Against the TSA Administrator Under the First Amendment, Fourth Amendment, or Any Other Law

Count 8 seeking an injunction is also subject to dismissal for the additional reason that it fails to state any legal claim against TSA Administrator Pekoske. Plaintiff did not plead any claim against Pekoske, and the Court therefore lacks any basis for granting injunctive relief. *See, e.g., Base One Tech., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) (dismissing a claim for injunctive relief set forth as a separate count in a complaint because injunctive relief "is not a freestanding cause of action"); *Mamigonian v. Briggs*, 2014 WL 301339, at *1 n.1 (E.D. Cal. Jan. 28, 2014) ("[A]n injunction . . . is not a freestanding claim, but a remedy.").

Even if Count 8 could be construed as pleading a claim directly under the Constitution, it is insufficient to state a claim. Count 8 fails to state a claim under the First Amendment because it does not allege that any particular action, policy, practice, or decision of the TSA Administrator or TSA violated the Amendment. In fact, Plaintiff pled that TSA policy accommodates First Amendment rights "by allowing the recording of TSA checkpoints so long as one does not interfere with screening or record the monitors of x-rays." Compl. ¶ 67. Plaintiff claims that despite TSA's constitutionally adequate policy, her First Amendment rights were violated by the actions of individual TSA employees who did not follow that policy. Plaintiff cannot sue the TSA Administrator directly under the First Amendment based on the alleged conduct of other parties. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"). She has simply not alleged that the TSA Administrator or the agency itself

1    violated the Amendment. [16]

2         Similarly, Count 8 also does not state a plausible claim that the TSA Administrator

3    violated the Fourth Amendment. Again, Plaintiff pled that TSA policy and training

4    comports with the Amendment, and her rights were violated by the rogue actions of

5    individuals who were not following policy. *See* Compl. ¶¶ 52, 61. Plaintiff has not

6    presented any specific, plausible factual allegations regarding any particular policy,

7    decision, or action by the TSA Administrator or the agency that violated the Fourth

8    Amendment. She therefore has not pled a claim against the Administrator directly under

9    the Amendment. *See Arnsberg*, 757 F.2d at 974 (holding that "the United States is not

10   liable under the Fourth Amendment for unreasonable seizures committed by its agents").

11        In addition, it is clear that Plaintiff's factual allegations do not state a violation of

12   her Fourth Amendment rights. She alleges that after a body scanner alarmed to indicate

13   the possible presence of an unauthorized item, she was required to complete a pat-down

14   to resolve the alarm. Compl. ¶¶ 18, 20, 22–23. This requirement was entirely lawful, as

15   airline passengers like Plaintiff do not have a Fourth Amendment right to quit the screening

16   process after it has begun. *Aukai*, 497 F.3d at 957 (en banc). Therefore, Plaintiff cannot

17   state a Fourth Amendment violation based on her allegations that she was not permitted

18   to refuse pat-down screening and leave the checkpoint after she had already triggered a

19   body scanner alarm.

20        Finally, even if Plaintiff had alleged facts sufficient to state a plausible First or

21   Fourth Amendment claim, courts should not "imply a judicially created cause of action

22   directly under the Constitution" when a statute already provides an adequate remedy.

23   *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1253 & n.15 (11th Cir. 2012); *accord*

24   *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (when a

25

26        ───────────────

27        [16] Furthermore, even if she could state a claim directly against Pekoske, the Court
     would lack personal jurisdiction over him; in order to bring a damage action against a
     federal official in his individual capacity, and thereby avoid the bar of sovereign

28   immunity, the normal rules for establishing *in personam* jurisdiction apply. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1459 (9th Cir. 1985)

24

statutory cause of action is available, a litigant "has no cause of action directly under the United States Constitution"). Here, Plaintiff has "a mechanism created by Congress," *id.*, for asserting a constitutional challenge to the specific way in which TSA policy and procedures were allegedly applied, or misapplied, to her: she could file a petition for review in an appropriate Court of Appeals under 49 U.S.C. § 46110. *See Gilmore*, 435 F.3d at 1133 n.9 (noting that "as-applied challenges" to TSA procedures that "arise out of the particular facts" of a passenger's screening experience "must be brought before the courts of appeals"); *Corbett v. TSA*, 930 F.3d 1255, 1240 (11th Cir. 2019). Thus, Plaintiff has failed to state a claim that the TSA Administrator violated the First or Fourth Amendments.

## VI.   CONCLUSION

For the foregoing reasons, Defendants United States and TSA Administrator Pekoske respectfully request that the Court dismiss Plaintiff's claims against them with prejudice.

Dated: August 31, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


   */s/ Jennifer R. Jacobs*
JENNIFER R. JACOBS
Assistant United States Attorney

Attorneys for Defendants United States of America and TSA Administrator David Pekoske